A00A1525. NORTHSIDE HOSPITAL, INC. v. RUOTANEN.
(541 SE2d 66)

ELLINGTON, Judge.

Jeanne Ruotanen sued Northside Hospital, Inc., alleging, inter alia, that her treatment by Northside in connection with the disposition of the body of her deceased father constituted intentional infliction of emotional distress. The trial court denied Northside's motion for summary judgment on Ruotanen's claim for intentional infliction of emotional distress.[1] Following our grant of Northside's application for interlocutory review of the trial court's order, Northside contends that its employees' conduct as alleged by Ruotanen was not sufficiently extreme and outrageous to be actionable in tort. We agree and reverse.

When ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable

---

[1] The trial court granted Northside's motion for summary judgment with respect to Ruotanen's claim for a violation of OCGA § 45-16-25.1 (duties of coroner or county medical examiner with custody of remains of a deceased). Ruotanen did not appeal that ruling.

doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citations omitted.) *Stanford v. Paul W. Heard & Co.*, 240 Ga. App. 869 (1) (a) (525 SE2d 419) (1999). See OCGA § 9-11-56; *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

Viewed in the light most favorable to Ruotanen's claim, the facts are as follows: On March 27, 1996, Ruotanen received a call from a Northside representative asking her to come to the hospital. When she arrived, a nurse told her that her father had passed away at the hospital. The nurse asked her if she wished to meet with the hospital chaplain and a woman the nurse identified as Ruotanen's father's fiancée. Ruotanen refused to meet with the fiancée and asked to make immediate arrangements for the release of her father's body. The nurse told Ruotanen that her father's fiancée had a power of attorney which appeared to give her the right to handle the arrangements for disposition of the body. Northside had a general policy to release bodies to the deceased's next of kin. In cases of conflicting claims of authority to direct disposition of a body, the hospital attempted to mediate among the parties and to determine if the deceased had provided directions in a will. The nurse told Ruotanen that nothing could be done that evening and that she should contact Wayne Collier, Northside's risk manager, the next day. Despite her disappointment at the delay, Ruotanen felt the hospital staff treated her very nicely that evening.

The next day, in her effort to secure the release of her father's body, Ruotanen contacted the coronary care unit which referred her to the hospital morgue. She was upset by the morgue personnel's reference during that conversation to her father's body as "the body."

Ruotanen also contacted Collier, as she had been instructed to do. Collier told Ruotanen that her father had signed a document giving his fiancée power of attorney as to the disposition of the body and, therefore, the hospital did not have the authority to release the body to Ruotanen. Ruotanen alleges Collier, a lawyer, knew the power of attorney was not legally valid. This first conversation with Collier ended "fairly amiably."

Sometime later that day, Ruotanen called Collier again and asserted her right as the next of kin to claim her father's body. Collier told her that her father's letter could be interpreted as a will, she did not have her "facts together," the hospital had no obligation to her, and he had no obligation to talk to her. Collier abruptly hung up on Ruotanen. Ruotanen paged Collier several more times that day but

did not receive a return call.

Three days after his death, after the executors of the estate obtained letters of administration, Northside released Ruotanen's father's body to the executors. The executors complied with Ruotanen's choice of funeral home and desire to have an autopsy performed.

The trial court held that summary judgment was not warranted on Ruotanen's claim for intentional infliction of emotional distress because under the circumstances, there was a genuine issue of material fact as to whether Northside should be liable for failing to release the body to Ruotanen. The trial court stated:

> [v]iewing the evidence most favorably to the Plaintiff, a jury could reasonably find that Mr. Collier's allegedly rude conduct towards Plaintiff as well as his alleged knowing misrepresentations of a purportedly valid power of attorney during Plaintiff's time of grief may be conduct that is outrageous and extreme, rather than merely rude or insulting.

The four elements which must be proved in order to sustain a claim of intentional infliction of emotional distress are:

> (1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe. Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. Moreover, it has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

(Citations and punctuation omitted.) *Phinazee v. Interstate Nationalease*, 237 Ga. App. 39-40 (514 SE2d 843) (1999). "Generally, the case is one which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *ComSouth Telesvcs. v. Liggett*, 243 Ga. App. 446, 447-448 (1) (531 SE2d 190) (2000).

The evidence presented in this case clearly fails to meet this standard. First, the use of the clinical term "the body" by the hospital morgue staff cannot be considered outrageous to an average member of the community. Next, given that the deceased had executed a document which directed that his fiancée be responsible for the disposition of his body, it was not unreasonable for Northside to proceed deliberately in determining who had the authority to claim the body. We find no evidence in the record that Collier made knowing misrepresentations about the effect of the purported power of attorney. Cf. *Williams v. Stepler*, 227 Ga. App. 591, 594 (2) (490 SE2d 167) (1997). Collier's comments and conduct, although possibly rude and insensitive in light of Ruotanen's recent loss, do not rise to the level of outrageousness necessary to sustain a claim for intentional infliction of emotional distress. *Pyle v. City of Cedartown*, 240 Ga. App. 445, 447 (2) (524 SE2d 7) (1999); *Biven Software v. Newman*, 222 Ga. App. 112, 114 (1) (473 SE2d 527) (1996). The trial court erred in denying Northside's motion for summary judgment on Ruotanen's claim for intentional infliction of emotional distress.

*Judgment reversed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED OCTOBER 19, 2000.

*Goldner, Sommers, Scrudder & Bass, Glenn S. Bass, Matthew P. Lazarus*, for appellant.

*Robert A. Elsner*, for appellee.