A01A1794. MIRALIAKBARI et al. v. PENNICOOKE et al.
(561 SE2d 483)

POPE, Presiding Judge.

A Burger King manager refused to let employee Zohreh Miraliakbari leave or even use the telephone to care for her six-year-old son who suffered a broken bone at school. Miraliakbari brought claims of intentional infliction of emotional distress and false imprisonment against Burger King and the manager, Rita Pennicooke. She also brought a claim, as next friend, on behalf of her son. The trial court granted summary judgment to the defendants, holding that the mother's claim was precluded by the Workers' Compensation Act, the facts did not show outrageous conduct sufficient to sustain an emotional distress claim, none of Pennicooke's actions were directed at the son, and the facts did not support false imprisonment. Miraliakbari appeals.

On appeal from a grant of summary judgment, this Court conducts a de novo review of the record, construing the evidence and all inferences therefrom in favor of the nonmoving party. *Maddox v. Southern Engineering Co.*, 231 Ga. App. 802, 803 (500 SE2d 591) (1998); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

1. Miraliakbari argues that the Workers' Compensation Act does not provide the exclusive remedy for her claim of intentional infliction of emotional distress because those claims are not covered by the provisions of the Workers' Compensation Act. See OCGA § 34-9-11 (a). We agree.

The only injury that Miraliakbari allegedly suffered is a nonphysical one — the emotional distress arising from Pennicooke's refusal to allow her to communicate with or care for her injured son under the threat of the loss of her job. The Workers' Compensation Act provides no remedy for a psychological injury unless "it arises naturally and unavoidably . . . from some discernible physical occurrence." (Citations and punctuation omitted.) *Southwire Co. v. George*, 266 Ga. 739, 741 (470 SE2d 865) (1996). See also *Betts v. MedCross Imaging Center*, 246 Ga. App. 873, 875-876 (1) (542 SE2d 611) (2000) (Act may provide remedy if psychological injury arises from fear of a future physical injury). The case of *Oliver v. Wal-Mart Stores*, 209 Ga. App. 703 (434 SE2d 500) (1993), is on point. In that case, the plaintiff's only claim was intentional infliction of emotional distress, and it did not arise out of a physical injury; therefore, a tort claim was not barred. Id. at 704. Cf. *Abernathy v. City of Albany*, 269 Ga. 88, 90-91

(495 SE2d 13) (1998) (psychic trauma not preceded or accompanied by a physical injury is not compensable under the Act). Accordingly, we hold that the trial court erred in granting summary judgment on Miraliakbari's claim of intentional infliction of emotional distress based on the exclusivity provisions of the Act.

There is nothing in *Potts v. UAP-GA. AG. CHEM.*, 270 Ga. 14 (506 SE2d 101) (1998), inconsistent with this holding.

2. Miraliakbari contends the trial court erred by finding that the defendants' conduct was not extreme and outrageous as a matter of law. To sustain a claim for intentional infliction of emotional distress requires proof of the following four elements: "(1) The conduct must be intentional or reckless; (2) The conduct must be extreme and outrageous; (3) There must be a causal connection between the wrongful conduct and the emotional distress; and (4) The emotional distress must be severe." (Citations omitted.) *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000). Extreme and outrageous mean exactly that:

[I]t has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

(Citations omitted.) Id. "Evidence of a defendant's malicious purpose or of a defendant's wanton disregard of a plaintiff's rights may be considered in evaluating whether or not the objected-to behavior can reasonably be characterized as outrageous or egregious. [Cit.]" *Gordon v. Frost*, 193 Ga. App. 517, 521 (1) (388 SE2d 362) (1989). But, " ' "major outrage in the language or conduct complained of is essential to the tort." ' " Id. at 522 (1), quoting Restatement (Second) of Torts, § 46 (1), comment f. Finally, whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law. *Yarbray v. Southern Bell Tel. &c. Co.*, 261 Ga. 703, 706 (2) (409 SE2d 835) (1991).

Construed in favor of Miraliakbari, the facts show that Miraliakbari, a single mother, is from Iran and does not speak English fluently. She is educated, having obtained a master's in accounting in Iran. On the day prior to the main incident, Miraliak-

bari had asked to leave work early to care for her sick son. The following day, six-year-old Shamin was injured at school sometime before lunch. School staff members tried unsuccessfully to call Miraliakbari at the Burger King where she worked at the drive-through window. They then left a message with a friend of Miraliakbari's, who also could not get through to Burger King. That friend called an acquaintance named Payam Jafari who worked near the Burger King, and Jafari went there to tell Miraliakbari that "something has happened to your son. You got to go to school." This occurred at about 12:00 and 12:30 during the busy lunch hour at the restaurant.

Miraliakbari asked her supervisor, Pennicooke, for 20 minutes so that she could go pick up her son. Pennicooke refused. Jafari then offered to pick up the boy, and Miraliakbari went outside to her car to give Jafari the relevant information. Pennicooke then yelled and screamed, "Where are you? What's happening?" At some point, Pennicooke told her that if she left she would be fired, and she repeated that two or three times during the whole episode.

About 20 minutes later, Miraliakbari realized that she had given Jafari an incorrect telephone number and asked Pennicooke to allow her to use the business telephone. Pennicooke refused despite hearing that Miraliakbari's son had an accident at school. When Miraliakbari attempted to use the phone anyway, Pennicooke unplugged it. She told Miraliakbari to stop crying and take orders and that if she touched the phone, she would be fired.

Miraliakbari was shaking, visibly upset, and crying until Pennicooke finally allowed her to use the phone to speak to her sister and school officials at about 2:00 p.m. She learned that her son had been injured but that he would be fine. At that time, the official asked to speak to Pennicooke, but Pennicooke refused saying, "I don't want to talk to anyone"; then she hung up on the official and told Miraliakbari to go back to work. Although she had a car, Miraliakbari did not leave because she was afraid of losing her job. She still did not know exactly what had happened to her son.

At 3:00 p.m., Miraliakbari's sister and Jafari arrived with the boy and told Miraliakbari that her son had been in a car wreck and that his arm was broken. The boy had not yet been taken to a doctor because her sister did not have information about insurance nor know where to go. At that time, Miraliakbari decided to leave and care for her son, despite the consequences.

Miraliakbari felt humiliated and ashamed and thought she was being treated like a dog or a slave. She did not suffer any physical injury and she was never physically prevented from leaving, but she alleges that she suffered nightmares, depression, and loss of sleep.

Pennicooke admitted that she did not attempt to verify that Miraliakbari had an emergency situation despite the fact that a com-

pany procedure required it. She explained that she acted the way she did because she did not believe Miraliakbari even though she knew that Miraliakbari was entitled to care for an injured child under the federal Family & Medical Leave Act. She believed that Miraliakbari's son was home sick based on the fact that he had been sick the previous day and based on a statement from a trusted employee that the child was still sick and at home. The day after the child's injury, Pennicooke received confirmation that he had indeed been injured, and she sent a message to Miraliakbari that she would not be fired. But, Miraliakbari never returned to work. Two weeks later, when she returned for her paycheck, Miraliakbari learned that she had been terminated.

Pennicooke's behavior was reckless and possibly wanton. See *Hendon v. DeKalb County*, 203 Ga. App. 750, 758 (5) (417 SE2d 705) (1992) ("wanton conduct is that which is so reckless or so charged with indifference to the consequences as to justify the jury in finding a wantonness equivalent in spirit to actual intent") (citations and punctuation omitted). She failed to follow procedures requiring her to investigate the claim of emergency. However, while certainly rude, we find that Pennicooke's actions do not rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.

Although the existence of a special relationship in which one person has control over another, such as the employer-employee relationship, may contribute to the outrageousness of the situation, it is not dispositive. *Troncalli v. Jones*, 237 Ga. App. 10, 15 (514 SE2d 478) (1999). Further, "it is not enough that appellant's conduct in a given situation is intentional or that it is wilful and wanton. In order to warrant recovery . . . , the conduct also must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. [Cits.]" (Emphasis omitted.) *Moses v. Prudential Ins. Co. &c.*, 187 Ga. App. 222, 225 (369 SE2d 541) (1988). In other words,

> [T]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. The rough edges of our society are still in need of . . . filing down, and in the meantime plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

(Punctuation and emphasis omitted.) Id., quoting Restatement (Second) of Torts, § 46 (1), comment d.

In this case, there is no evidence of malice, intent to harm, or retribution. Compare *Yarbray*, 261 Ga. at 706. Rather, Pennicooke's reckless behavior resulted from a misplaced belief that Miraliakbari was merely attempting to get extra time off of work. As stated by the trial court,

> while the conduct may be viewed as harsh and insensitive, the supervisor's responsibilities to oversee the workplace and the employee's obligations to perform her duties do not make such conduct so extreme as to go beyond all reasonable bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

Miraliakbari could have left (and eventually did leave) despite the threat of the loss of her job. That would have obviated any stress or mental suffering arising from her inability to care for her child. Without more, this tort is not meant to apply to such an occurrence. We conclude the trial court did not err in granting summary judgment on Miraliakbari's claim of intentional infliction of emotional distress.

3. Miraliakbari contends the trial court erred by dismissing her son's claim, which she filed on his behalf, for the pain and suffering he endured during the time his mother was prevented from obtaining medical care for him. However, Burger King owed no duty to Shamin and had not assumed one. This fact distinguishes *Mixon v. Dobbs Houses, Inc.*, 149 Ga. App. 481 (254 SE2d 864) (1979), where the employer assumed a duty *to the employee's wife* to notify the employee that his wife was in labor and needed a ride to the hospital. In this case, Burger King did not assume any duty relative to Shamin. Nor did Pennicooke take any action directed toward Shamin.

Furthermore, Miraliakbari concedes that the school was authorized to consent to medical treatment for the child when she was unavailable. Therefore, any possible causal link between Pennicooke's refusal to allow her to leave work and her son's continued pain and suffering is broken. The trial court did not err by granting summary judgment on this claim.

4. Miraliakbari also contends the trial court erred by granting summary judgment on her claim of false imprisonment. She claims that the threat of loss of a job constitutes sufficient force or fear to form the basis of a claim for false imprisonment.

"False imprisonment is the unlawful detention of the person of another, for any length of time, whereby such person is deprived of his personal liberty." OCGA § 51-7-20. The restraint used to create the detention must be against the plaintiff's will and be accomplished by either force or fear. *J. H. Harvey Co. v. Speight*, 178 Ga. App. 812, 813 (344 SE2d 701) (1986).

"The restraint constituting a false imprisonment may arise out of words, acts, gestures or the like, which induce a reasonable apprehension that force will be used if plaintiff does not submit; and it is sufficient if they operate upon the will of the person threatened, and result in a reasonable fear of personal difficulty or personal injuries." [Cit.]

*Greenbaum v. Brooks*, 110 Ga. App. 661, 663 (1) (139 SE2d 432) (1964).

There is no indication in the facts of this case that Miraliakbari was faced with a reasonable apprehension that force would be used to keep her at work. In fact, she admits that she was not physically prevented from leaving. Rather, she was only told that she would lose her job if she left. Furthermore, she eventually left under the same threat, which shows that she was free to leave all along.

It is true that the exercise of dominion over someone's property may serve as an exercise of dominion over that person. See *Wallace v. Stringer*, 250 Ga. App. 850, 854 (1) (b) (553 SE2d 166) (2001). But, we find no authority in Georgia applying this rule to the threat of loss of an at-will, nonpublic job. Compare *Sykes v. City of Atlanta*, 235 Ga. App. 345, 346 (3) (509 SE2d 395) (1998) ("public employee has a property right interest in a job if the employee may be dismissed only for cause") (citations omitted). Nor do we find Georgia authority for the proposition that fear of losing one's job constitutes the necessary fear of personal difficulty to support a claim for false imprisonment. Our holding is consistent with foreign authority holding that the threat of discharge of an at-will employee cannot constitute the basis of a false imprisonment claim. See *Foley v. Polaroid Corp.*, 400 Mass. 82, 90-93 (508 NE2d 72) (1987).

Finally, the fact that Pennicooke may have acted in violation of the Family & Medical Leave Act or any private duty to Miraliakbari by threatening to fire her is not relevant to whether she was detained by force or fear.

5. Miraliakbari contends the trial court erred by finding "that no private duty arose by statute pursuant to OCGA § 51-1-8 when it held that Appellees' actions in denying Appellant her rights under the Family and Medical Leave Act, . . . and OCGA § 19-7-2 failed to state a cause of action."

First, we find no such finding by the court. Second, Miraliakbari stated only five counts in her complaint: (1) intentional infliction of emotional distress; (2) intentional injury to Shamin; (3) punitive damages; (4) attorney fees; and (5) false imprisonment. The trial court granted summary judgment on each of these counts, and in Divisions 1 through 4 we have affirmed that decision. We fail to see any remaining issue or that this enumeration is relevant to the

claims already eliminated. Accordingly, this enumeration is without merit.

*Judgment affirmed. Blackburn, C. J., and Mikell, J., concur.*

DECIDED MARCH 8, 2002 —

*Maurice J. Bernard III*, for appellants.

*Zirkle & Hoffman, Charles B. Zirkle, Jr., Benjamin E. Pellegrini, Nancy C. Collins, Devon A. Petree, Dawn E. Carpenter*, for appellees.