A09A0097. WEAVER v. PIZZA HUT OF AMERICA, INC. et al.
(680 SE2d 668)

PHIPPS, Judge.

Julia Bennett Weaver sued Pizza Hut of America, Inc., the owner and operator of the restaurant where she worked, and Sharlene Zana

Martin, a Pizza Hut employee with supervisory responsibilities over that restaurant. Weaver alleged that the defendants were liable to her because their acts and omissions had led to her arrest and approximately 15-hour detention. The trial court granted the defendants summary judgment, and Weaver appeals. For reasons that follow, we affirm.

On appeal from the grant of summary judgment, this court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warranted judgment as a matter of law.[1]

On June 10, 2003, permit inspectors for the City of Atlanta Police Department visited the restaurant located in Atlanta and determined that it was not in compliance with a city ordinance that required a city alcohol license for its business operations. After Weaver told the inspectors that she was the shift manager on duty at that time, one of the inspectors informed her that she would be issued a citation. That inspector obtained from Weaver her identification card, prepared the citation, then handed to Weaver both the citation and her identification card.

In its top margin, the document was titled, "ARREST CITATION"; it named only "Julia Bennett Weaver" as defendant; it described the violation as "Selling alcohol w/o a lic" and specified the city ordinance at issue; and it set forth: "YOU ARE HEREBY COMMANDED to appear at the Municipal court, General Division of the City of Atlanta, to be held at [street address] on the 10 day of July 2003 at 2:00 pm."

Weaver recalled in her deposition that, in handing her the citation, the inspector told her to tell "them" that "they" needed to bring the alcohol license when "they" came to court. Weaver believed that those references related only to Pizza Hut. She deposed, "I knew [the inspector] wrote my name on that because she asked me for my ID." But Weaver did not read the citation. Instead, when her supervisor, the store manager, arrived later that day, she handed the citation to him and told him that he needed to take a valid alcohol license with him to court. Weaver recounted that the store manager responded, "We'll take care of it," and then put the citation in his pocket.

The store manager deposed that an alcohol license had arrived in the mail earlier that year,[2] at which time, he was told by his

---

[1] *Merlino v. City of Atlanta*, 283 Ga. 186 (657 SE2d 859) (2008); see OCGA § 9-11-56 (c).

[2] The store manager testified that he later realized that it was a state license, not a city license.

supervisor, defendant Martin, that the restaurant was properly licensed to sell alcohol and to begin ordering and selling alcohol. Thus, the restaurant began selling alcohol. The store manager recalled that, the day after Weaver gave him the citation, he showed it to Martin and Martin told him that Pizza Hut would take care of "everything." The store manager testified that he relayed to Weaver what Martin had told him, then placed the citation in a file at the restaurant.

Weaver deposed that within a few weeks of being handed the citation, she discussed the matter with Martin. Weaver testified that she pointed out to Martin that the citation had her name on it, and Martin told her, "We'll take care of it." Weaver understood this response as referring to both the citation and the licensing issue.

Martin deposed that she had advised the store manager to begin selling alcohol based upon information she had received from Pizza Hut's license specialist. The license specialist deposed that, in January 2003, Martin called her about the status of the alcohol license for the restaurant. She in turn called the City of Atlanta and was told by "someone" that the City had received Pizza Hut's paperwork, that the department was "running behind on processing," but that Pizza Hut could begin selling alcohol at the location at issue. Therefore, that same month, the license specialist informed Martin that alcohol could be sold at the restaurant.

Martin deposed that, based on the information received from the license specialist, she continued to believe that the store was properly licensed to sell alcohol, despite being told about the citation. Further, she claimed that the store manager never showed her the actual citation.

At any rate, Weaver did not appear in court as commanded in the citation,[3] and a bench warrant issued for her arrest. Accordingly, a police officer appeared at Weaver's residence and arrested her at 1:00 a.m. on August 20, 2003. The officer advised Weaver that she was being arrested for selling alcohol without a license and for failing to appear as summoned in the citation. She was placed in the back of a police car, transported to jail, booked, then held in either a cell or a holding room.

Soon after her arrest, Weaver spoke to Martin by telephone. After being notified of Weaver's arrest and court hearing scheduled for 8:00 that same morning, Martin contacted the store manager at about 1:30 a.m. and told him to go to the detention center to try to assist Weaver. The store manager went to the courthouse shortly after 6:00 a.m., waited outside for the courthouse to open, and was

---

[3] Neither did any Pizza Hut representative appear at the hearing.

present for Weaver's court hearing. The store manager brought with him the citation and attempted to explain that the problem was not the fault of Weaver, but of Pizza Hut. Weaver's case was continued until September so that Weaver could obtain counsel. At about 4:00 p.m. that day, she was released from custody on signature bond.

It is undisputed that on the date the citation issued, Pizza Hut did not have a valid license from the City of Atlanta to sell alcohol. It is also undisputed that Weaver had no responsibility for securing such a license. In September, Weaver returned to court with her own attorney, and she concedes on appeal that Pizza Hut's attorney also appeared at that hearing and advised the court that she "had done nothing wrong." The two underlying charges — selling beer without a license and failure to appear — were dismissed.

Weaver filed suit against Pizza Hut and Martin, alleging theories of negligence, intentional infliction of emotional distress, and fraud, and seeking compensatory and punitive damages. The defendants moved for summary judgment, arguing that Weaver had shown no triable issue as to any claim. After a hearing, the trial court summarily granted the defendants' motion.

1. Weaver contends that the trial court erred by granting the defendants summary judgment on her negligence claim. She maintains that the defendants negligently: (a) failed to obtain a 2003 alcohol license required by the City of Atlanta; (b) instructed the store manager to sell alcohol at the Atlanta restaurant; and (c) failed to appear in court and address the citation, after assuring her that they would do so. Weaver alleged in her complaint that, as a result of the defendants' negligence, "[she] was arrested at her home, detained in pretrial detention center, and suffered humiliation, emotional distress, attorney's fees and other damages."

The defendants argued on motion for summary judgment, among other grounds, that Weaver had suffered no physical injury and thus could not pursue a negligence claim to recover for emotional distress. Alternatively, they contended that Weaver's own comparative negligence as a matter of law exceeded their alleged negligence, thereby barring recovery.

Weaver contends on appeal that the defendants have mischaracterized her claim as one of "negligent infliction of emotional distress," countering she never asserted such a claim in her complaint. Citing *Oden & Sims Used Cars v. Thurman*,[4] she argues that a plaintiff may assert a claim for negligence "where the damages consist of the arrest and incarceration of the plaintiff without any physical injury."

---

[4] 165 Ga. App. 500 (301 SE2d 673) (1983).

Assuming, without deciding, that Weaver's negligence claim is cognizable under Georgia law,[5] the claim succumbs to the defendants' argument concerning Weaver's own negligence. OCGA § 51-11-7 pertinently states: "If the plaintiff by ordinary care could have avoided the consequences to himself caused by the defendant's negligence, he is not entitled to recover." Accordingly, the Supreme Court of Georgia has instructed, "Even if a defendant is negligent, a determination that a plaintiff . . . failed to exercise ordinary care for her own safety bars recovery for the resulting injury suffered by the plaintiff, unless the injury was wilfully and wantonly inflicted."[6] "A plaintiff is held accountable for the failure to exercise due care for personal safety when doing an obviously dangerous act, and that failure is regarded as the sole proximate cause of the injury."[7]

Generally, the issue of a plaintiff's lack of ordinary care is not susceptible of summary adjudication; but where, as here, the evidence is plain, palpable, and undisputed, summary judgment is properly granted.[8] It is uncontroverted that Weaver received a citation that commanded *her* to appear in court to answer the charge specified thereupon. Weaver admittedly realized that the document was in her name. No reasonable person could find that Weaver exercised ordinary care for herself by choosing not to read and consequently failing to comply with a citation issued to her — notwithstanding representations by Pizza Hut's personnel purporting to relieve her of the citation's plainly stated command. Furthermore, the record reveals that Weaver had a plausible defense to the charge of selling alcohol without a license and was exonerated of that charge. Under these circumstances, Weaver's failure to appear in court as commanded by the citation was an obviously risky act, which led to her arrest, and is properly regarded as the sole proximate cause of her injuries for which she seeks damages. As there is no showing that the defendants' acts were wilful and wanton, recovery is barred by Weaver's own negligence.

---

[5] But see *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 588 (533 SE2d 82) (2000) (except for limited circumstances such as where the impact rule is satisfied, "declin[ing] to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress); *Daniel v. Ga. R. Bank &c. Co.*, 255 Ga. 29, 31 (334 SE2d 659) (1985) (citing *Ogden & Sims Used Cars*, but expressly pretermitting whether a defendant may be liable for negligently causing the arrest of another); *Hamilton v. Powell, Goldstein, Frazer & Murphy*, 252 Ga. 149, 150 (311 SE2d 818) (1984) ("[a]s a general precept, damages for mental distress are not recoverable in the absence of physical injury where the claim is premised upon ordinary negligence").

[6] *City of Winder v. Girone*, 265 Ga. 723, 724 (2) (462 SE2d 704) (1995) (citation and footnote omitted).

[7] Id. (citation omitted).

[8] *Robinson v. Kroger Co.*, 268 Ga. 735, 739-740 (1) (493 SE2d 403) (1997).

Nothing in *Oden & Sims Used Cars*,[9] relied upon by Weaver, provides for a different outcome. In that case, the plaintiff's exercise of ordinary care was not at issue.

2. Weaver contends that the trial court erred by granting the defendants summary judgment on her claim of intentional infliction of emotional distress. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress."[10] Weaver cites the defendants' conduct of (a) instructing the restaurant to sell alcohol without having a license to do so, in violation of Pizza Hut's policies, thereby putting the company's own employees at risk; (b) having knowledge that, because of Pizza Hut's misconduct, a citation had been issued in Weaver's name; and (c) taking the citation from her, representing to her that Pizza Hut would take care of it, and then not doing so.

Among other grounds, the defendants argued on motion for summary judgment that Weaver had failed to show the requisite level of extreme and outrageous conduct.[11]

> It is a question of law whether a claim rises to the level of extreme and outrageous conduct necessary to support a claim of intentional infliction of emotional distress. If there is evidence from which reasonable persons can find severe emotional distress resulting from extreme and outrageous conduct, the issue is one for the jury.[12]

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice, or a degree of aggravation that would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Evidence of a defendant's malicious purpose or of a defendant's wanton disregard of a

---

[9] *Supra.*

[10] *Blockum v. Fieldale Farms Corp.*, 275 Ga. 798, 801 (3) (573 SE2d 36) (2002) (punctuation omitted).

[11] See *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435 (541 SE2d 66) (2000) (an element of a claim of intentional infliction of emotional distress is that "[t]he conduct must be extreme and outrageous").

[12] *Blockum*, supra (citations omitted).

plaintiff's rights may be considered in evaluating whether or not the objected-to behavior can reasonably be characterized as outrageous or egregious. But major outrage in the language or conduct complained of is essential to the tort.[13]

While the defendants in this case may have acted negligently, we do not believe that the requisite level of "extreme and outrageous" conduct has been shown for liability under the tort of intentional infliction of emotional distress.[14] Weaver points out that the existence of a special relationship in which one person has control over another, such as the employer-employee relationship, may also be considered when evaluating whether the conduct was extreme and outrageous.[15] However, the existence of such a relationship is not dispositive.[16]

The case of *E-Z Serve Convenience Stores v. Crowell*,[17] cited by Weaver, does not provide for a different conclusion. In that case, there was sufficient evidence to uphold the jury's verdict in favor of the plaintiff on his claim of intentional infliction of emotional distress against his employer.[18] There, the plaintiff, in his capacity as a manager of an E-Z Serve convenience store, was issued a citation because of violations of a city ordinance, which imposed fines on entities whose alarm systems exceeded a set number of false alarms.[19] The citation provided that the charges would have to be answered in court on a certain date unless the fines were paid.[20] The plaintiff gave the citation to his supervisor, who warranted to him that he would take care of it.[21] Because the fines were not paid and no representative of the company appeared in court to answer the charges, the store manager was arrested and detained for over 24 hours.[22]

Unlike in the instant case, however, the employer defendant had displayed a conscious indifference toward the store manager which precipitated the store manager's injuries.[23] E-Z Serve had violated

---

[13] *Miraliakbari v. Pennicooke*, 254 Ga. App. 156, 157 (2) (561 SE2d 483) (2002) (citations and punctuation omitted).

[14] See id. at 159 (2) (noting that "it is not enough that [a defendant's] conduct in a given situation is intentional or that it is wilful and wanton").

[15] See id.

[16] Id.

[17] 244 Ga. App. 43 (535 SE2d 16) (2000).

[18] Id. at 45 (1) (a).

[19] Id. at 43 (1).

[20] Id. at 43-44 (1).

[21] Id. at 44 (1).

[22] Id.

[23] Id. at 45 (1) (a).

the city's false alarm ordinance on six occasions prior to the issuance of the citation.[24] And even before the citation issued, E-Z Serve had received numerous notifications that it owed fines for violating the ordinance, and the store manager had passed on such notifications to his supervisor on at least three occasions.[25] Yet E-Z Serve took no action.[26] What is more, after the supervisor was informed that the manager had been arrested as a result of the false alarm charge, neither he nor any other employee of E-Z Serve acted to help the manager get out of jail.[27]

Whereas E-Z Serve thus displayed a pattern of disregarding numerous opportunities to rectify the situation, the defendants in the instant case did not. Martin, who had supervisory responsibilities at eight Pizza Hut restaurants, including the one where Weaver worked, testified that none of those restaurants had ever been cited for failure to comply with a licensing law. Furthermore, Martin and the store manager believed that the restaurant at issue here was properly licensed. When notified of Weaver's arrest and detention, Martin and the store manager acted swiftly to assist her. And when the case was heard in court, Pizza Hut's lawyer worked to reconcile the issue to Weaver's benefit. Under these circumstances, we conclude that the defendants' conduct was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."[28] The trial court did not err in granting the defendants summary judgment on Weaver's claim of intentional infliction of emotional distress.[29]

3. Weaver contends that the trial court erred by granting the defendants summary judgment on her fraud claim, asserting that the evidence showed that the store manager and Martin represented to her that Pizza Hut would take care of the citation. In addition, Weaver cites the store manager's action of taking physical possession of the citation.

> The tort of fraud is defined in Georgia law as the willful misrepresentation of a material fact, made to induce another to act, upon which such person acts to his injury. An essential element in every fraud action is a finding that the representation was made with the intention and purpose of

---

[24] Id. at 43 (1), n. 1.
[25] Id. at 43 (1).
[26] Id.
[27] Id. at 45 (1) (a).
[28] *Miraliakbari*, supra at 157 (2).
[29] See id. at 159-160 (2).

deceiving the opposite party and for the purpose of injuring him.[30]

The defendants argued on motion for summary judgment that Weaver had failed to show that they had acted with the intent to deceive. "While fraud cannot generally be based on instances of misrepresentations as to future events, it may consist of such instances if, when the misrepresentation is made, the defendant knows that the future event will not take place."[31] Because Weaver has presented no evidence that any representation made to her by the store manager or Martin was made with a present intent not to perform, summary judgment to the defendants was proper.[32]

4. Weaver contends that the trial court erred by granting the defendants summary judgment on her claim for punitive damages. Having lost her underlying tort claims, Weaver can demonstrate no basis for punitive damages.[33]

5. Weaver's final contention, responding to the defendants' argument below that the exclusive remedy doctrine of the Workers' Compensation Act barred all her claims,[34] is moot.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED JULY 1, 2009 — ▮▮▮▮▮▮▮▮▮▮

*Cash, Krugler & Fredericks, David N. Krugler, Charles A. Mathis, Jr.*, for appellant.

*Carlock, Copeland & Stair, Scott D. Huray, Jason W. Hammer*, for appellee.

---

[30] *McDaniel v. Elliott*, 269 Ga. 262, 264-265 (2) (497 SE2d 786) (1998) (citation omitted).

[31] *Hayes v. Hallmark Apts.*, 232 Ga. 307, 308 (1) (207 SE2d 197) (1974).

[32] See *Davidson Mineral Properties v. Baird*, 260 Ga. 75, 78 (5) (390 SE2d 33) (1990) (statements were not fraudulent, where they were statements or promises as to future events, not facts as they then existed, and there was no evidence that the promises were made with the present intent not to perform); cf. *E-Z Serve Convenience Stores*, supra at 46 (1) (b) (due to supervisor's history of ignoring prior notifications regarding ordinance violations, jury could have concluded that, at the time the supervisor informed store manager that he would take care of ordinance citation, the supervisor had no real intention to do so).

[33] See *Lilliston v. Regions Bank*, 288 Ga. App. 241, 246 (3) (653 SE2d 306) (2007); *Young v. Turner Heritage Homes*, 241 Ga. App. 400, 401-402 (2) (526 SE2d 82) (1999).

[34] See OCGA § 34-9-11 (a).