**WHOLE COURT**

**NOTICE: Motions for reconsideration must be**
***physically received*** **in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**March 29, 2013**

# In the Court of Appeals of Georgia

A12A1667. GARCIA v. SHAW INDUSTRIES, INC.

BRANCH, Judge.

Karina Garcia appeals from the trial court's grant of summary judgment to her former employer, Shaw Industries, Inc. She contends the trial court erred in granting summary judgment because genuine issues of material fact remain as to her claim for intentional infliction of emotional distress, and she argues that her defamation claim is not barred by the statute of limitation. For the reasons the follow, we affirm.

On appeal from a grant of summary judgment, this Court reviews the evidence de novo, viewing it in the light most favorable to the nonmoving party, to discern whether a genuine issue of material fact remains or whether the moving party is entitled to judgment as a matter of law. *Smith v. Lott*, 317 Ga. App. 37, 37 (730 SE2d 663) (2012).

Garcia is not a United States citizen, but she entered the country legally with a border-crossing card. She was not authorized to work in the United States, but she

obtained employment at a company called Modern Fibers using the name, Social Security number, and other personal information of Cristal Sanchez, a United States citizen whose identity Garcia paid $400 to use. When Shaw purchased Modern Fibers, Garcia reapplied for her job, again under the Sanchez name. She consistently indicated on all applicable employment forms that her name was Sanchez. [1]

In March 2007, Garcia slipped and fell at work, injuring her back and knees. After treatment, she returned to light-duty work with some restrictions, and Shaw's third-party administrator, Gallagher Bassett, filed an initial claim with the Georgia State Board of Workers' Compensation (the "Board"). Garcia later retained a lawyer because she thought she had to wait too long for doctor's appointments, and this attorney on July 26, 2007, filed a Form WC-14 notice of claim with the Board and copied Shaw and Gallagher Bassett at that time; that form gives Garcia's first name as "Karina" and her last name as "Garcia aka Cristal Sanchez." The Board then opened a separate claim file.

---

[1] But Garcia deposed that the Shaw employee who helped her fill out the application told her to apply using the Sanchez name, rather than her real name.

Garcia became eligible for Temporary Partial Disability ("TPD") benefits because she was earning less at her light-duty job, and Gallagher Bassett began paying those benefits in checks made out to "Cristal Sanchez."

In December 2007, without challenging Garcia's back injury, Shaw requested a hearing regarding benefits for Garcia's other injuries, and Shaw hired attorney Robert Ryan to handle that dispute. Ryan saw that on a WC-14 notice of claim[2] Garcia gave her name as "Karen Garcia a/k/a Cristal Sanchez" and that she had requested that she be assigned a Social Security number; he therefore served discovery on her asking if she was a United States citizen and if she was authorized to work in the United States. Garcia refused to respond and invoked the Fifth Amendment. Ryan arranged a follow-up deposition, which was held on February 26, 2008, at which Garcia revealed that the name and Social Security number she provided to Shaw were not hers; she refused to provide additional clarification.

Consequently, on March 5, 2008, Shaw discharged Garcia, following which Ryan told Garcia's attorney that Shaw would continue to provide medical benefits and TPD income benefits, but would not provide Temporary Total Disability ("TTD")

---

[2] Garcia filed multiple WC-14 forms, and it is unclear to which one Ryan was referring.

3

income benefits, because Shaw believed that Garcia's inability to work was due to her immigration status rather than to her injury. Garcia later admitted that after her discharge, she continued to tell potential employers that she was authorized to work in the United States despite the fact that she had never been authorized to do so and that her authority to be in the United States had expired. Garcia also admitted that after her termination she continued to identify herself under the assumed identity when applying for jobs.

In December 2008, Ryan heard the Director of the Enforcement Division of the Workers' Compensation Board speak at a seminar about the issue of the use of false identity by illegal aliens, following which Ryan spoke to Shaw about Garcia's case. In March 2009, one year after discharging Garcia, Shaw filed a complaint with the fraud and compliance unit of the Board. See OCGA § 34-9-24 (establishing the fraud and compliance unit). The complaint states that "this is a case of suspected identity theft and a case of suspected misrepresentation" and that Garcia had "willfully made false and misleading representation[s] for the purpose of obtaining workers' compensation benefits." Shaw "respectfully request[ed] that the Board review this matter to determine if the Claimant has committed workers' compensation fraud." The complaint stated the history of Garcia's employment as Cristal Sanchez and how Shaw

4

was paying her workers' compensation benefits under that name. The complaint also mentioned a WC-14 dated December 20, 2007 and highlighted how the plaintiff gave her name as "Karina Garcia a/k/a Cristal Sanchez" on that form. At her deposition in this lawsuit Garcia admitted that all the factual assertions in the complaint that Shaw filed were true.

At some point, Shaw, on request from the Board's fraud unit, provided the division with a copy of Garcia's file. And approximately one year after Ryan filed the complaint for Shaw, someone from the Board's fraud unit contacted Ryan to say that she had warrants for Garcia's arrest. She asked Ryan if there were any upcoming hearings or depositions so that they could locate Garcia, and Ryan told her about the upcoming April 8, 2010, deposition. Garcia was arrested on warrants signed by a magistrate judge for forgery and possession of a fraudulent document on April 8, 2010, as she was leaving her attorney's office after the deposition. On September 9, 2010, Garcia filed the action that led to this appeal.

1. Garcia contends the trial court erred in granting summary judgment to Shaw as to Garcia's claim for intentional infliction of emotional distress. Specifically, she argues that there is evidence from which a reasonable person could find that Shaw set her up for arrest causing her severe emotional distress sufficient to create a claim of

5

intentional infliction of emotional distress. Although we do not condone Shaw's conduct, we conclude that it does not rise to the level of extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress.

(a) We first address Shaw's contention that its actions in filing the fraud complaint were protected from liability under OCGA § 34-9-24, a provision of the Workers' Compensation Act that provides a safe harbor for persons who "[i]n the absence of fraud or malice" furnish the Board with information regarding suspected fraud:

> In the absence of fraud or malice, no person or entity who furnishes to the board information relevant and material to suspected fraud under or noncompliance with the workers' compensation laws of this state shall be liable for damages in a civil action or subject to criminal prosecution for the furnishing of such information.

OCGA § 34-9-24 (d).

Here, Garcia admits that the allegations contained in Shaw's complaint are true, and therefore it is undisputed that Shaw did not commit fraud when it filed its complaint. And both Ryan, the attorney Shaw hired in connection with Garcia's workers' compensation issues, and Melinda Majors, the workers' compensation analyst in Shaw's Risk Management department, testified that they were not motivated

to file the complaint by malice or ill-will against Garcia. Rather, although Shaw made clear that it would continue to provide medical benefits and TPD income benefits to Garcia, it was concerned about Garcia's future eligibility for TTD income benefits because Shaw believed that her inability to work was due to her immigration status rather than to her injury. When "sworn testimony evidences [a party's] good faith in filing [a] complaint" the opposing party "cannot rest upon his allegations or denials but is cast with the burden of showing there was a genuine issue for trial." (Citation and punctuation omitted.) *Farrar v. Macie*, 297 Ga. App. 192, 195 (3) (676 SE2d 840) (2009). Garcia has offered little more than rhetoric in her attempt to carry that burden.

Garcia describes her case of intentional infliction of emotional distress as being based on the following assertions: that Shaw knew well before it filed the complaint that Garcia was operating under an assumed identity; that Shaw continued to pay Garcia workers' compensation benefits payments under the Sanchez name, anyway; that Shaw filed the complaint days after Garcia found out she might need back surgery; that Shaw failed to disclose to the Board that it possessed a copy of the earliest WC-14 showing Garcia had an alias; that Shaw's attorney lured her into a deposition so that she could be arrested, and perhaps, deported; and that the arrest was "set up" at Shaw's request.

7

First, even if it is true that Shaw knew that Garcia had an alias and that Shaw was paying Garcia under the wrong name, it is not malice for Shaw to want to bring Garcia's possible illegal behavior to an end. Second, Garcia offers no evidence to show that Shaw knew at the time it filed the complaint that Garcia's medical condition had worsened. Third, the fact that Shaw's counsel may have told the investigator from the workers' compensation fraud unit where Garcia could be found in order that she be arrested is not evidence of malice. The investigator could have found Garcia's whereabouts in many other ways. Assisting law enforcement by providing readily available information does not amount to malice. And finally, Garcia's rhetoric that Shaw "set up" her arrest is belied by the fact that the arrest was the result of a truthful complaint, an investigation by the fraud unit, and a warrant authorized by a magistrate court judge. Not even the dissent disputes that the charges against Garcia were authorized based on her conduct. Thus, we are tempted to conclude that Garcia failed to carry her burden of showing that there was a genuine issue for trial regarding Shaw's alleged malice.

(b) But pretermitting whether Shaw could be protected from liability by OCGA § 34-9-24 or other immunity law,[3] a claim of intentional infliction of emotional distress requires a showing of "extreme and outrageous conduct,"[4] which means much more than malice:

> It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, *or even that his conduct has been characterized by malice*, or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

---

[3] OCGA § 51-5-7 provides in part, "The following communications are deemed privileged: (1) Statements made in good faith in the performance of a public duty; (2) Statements made in good faith in the performance of a legal or moral private duty; (3) Statements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned; (4) Statements made in good faith as part of an act in furtherance of the right of free speech or the right to petition government for a redress of grievances under the Constitution of the United States or the Constitution of the State of Georgia in connection with an issue of public interest or concern, as defined in subsection (c) of Code Section 9-11-11.1; . . ."

[4] "The elements of a cause of action for intentional infliction of emotional distress are: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) a causal connection between the wrongful conduct and the emotional distress; and (4) severe emotional distress." *Ferrell v. Mikula*, 295 Ga. App. 326, 333 (3) (672 SE2d 7) (2008).

(Emphasis supplied, punctuation omitted.) *Bowers v. Estep*, 204 Ga. App. 615, 618 (2) (420 SE2d 336) (1992), citing Restatement (Second) of Torts, § 46, comment d. In this case, as a matter of law Shaw's actions do not amount to extreme and outrageous conduct.

"Whether a claim rises to the requisite level of outrageousness and egregiousness to sustain a claim for intentional infliction of emotional distress is a question of law." (Citation and punctuation omitted.) *Frank v. Fleet Finance, Inc. of Ga.*, 238 Ga. App. 316, 318 (518 SE2d 717) (1999). See also *Racette v. Bank of America, N.A.*, 318 Ga. App. 171, 179 (3) (733 SE2d 457) (2012) (same).

When Shaw filed an administrative fraud complaint with the Georgia State Board of Workers' Compensation, it truthfully and accurately related the facts, as Garcia has admitted. Garcia had been discharged from Shaw a year earlier, and there is no evidence that Shaw had any continuing contact with Garcia or any animus or ill-will. Instead, Shaw had reason to believe that Garcia was falsifying her identity and lying about her authorization to work in the United States. Shaw may have also desired to shed a light on Garcia's fraudulent behavior in the hopes that it might affect its liability for continuing workers' compensation benefits, but the fact remains that when it made its report to the Board, Shaw had a well-formed basis to believe that

10

Garcia was engaging in illegal conduct. In light of its fully accurate report of Garcia's misconduct, Shaw's decision to report a suspected crime, even if motivated by a desire to limit its future workers' compensation exposure, cannot be said to be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."

The case of *Fleming v. U-Haul Co. of Georgia*, 246 Ga. App. 681 (541 SE2d 75) (2000), is distinguishable because in that case the plaintiff presented some evidence that the defendant lacked a good faith basis for swearing out an arrest warrant. In *Fleming*, the plaintiff made two telephone calls to U-Haul report that his rented truck had broken down on Interstate 20 and to give his name, location, and the contract number. Id. Despite being told in each call that someone was coming to assist, no one showed up for one hour and forty minutes, whereupon the plaintiff left the keys in the truck (not in the ignition), hitchhiked home, and had no further contact with U-Haul. Id. Sometime thereafter, U-Haul swore out a warrant for the plaintiff's arrest, and the plaintiff was eventually arrested and spent eight days in jail. Id. at 682. The plaintiff was indicted for theft by conversion, but U-Haul later dismissed the

11

charge because the truck had been recovered and U-Haul did not wish to pursue the case. Id.

This court held that the dismissal of the case was some evidence that probable cause was lacking; that the jury would be authorized to find that U-Haul "negligently failed to ascertain the complete state of facts or recklessly failed to present them fully and fairly to the magistrate who issued the arrest warrant"; and that a jury could conclude that U-Haul "wantonly disregarded [the plaintiff's] rights in swearing out an arrest warrant . . . [after the plaintiff] informed U-Haul's agents [the truck] was stalled, after the twice-promised roadside assistance never materialized." Id. at 683-684. Here, it is undisputed that Shaw provided fully accurate information in the complaint and there is no suggestion that probable cause for Garcia's arrest was lacking.

For the reasons discussed in Division (1) (b), a rational jury could not reasonably conclude that Shaw acted in an extreme and outrageous manner when it filed a complaint with the Board that led a government agency to investigate and, eventually, arrest Garcia. Accordingly Garcia's claim of intentional infliction of emotional distress must fail.

12

2. Garcia next argues that the trial court erred in granting summary judgment to Shaw on its allegation that her defamation claim was barred by a one-year statute of limitation.

Shaw filed the fraud complaint with the Board on March 19, 2009. On September 9, 2010, Garcia filed her defamation claim alleging that Shaw wrongfully accused her of "forgery" and "stated this to multiple other people in order to provoke these criminal charges." Garcia's complaint was filed about 18 months after Shaw's complaint to the Board. OCGA § 9-3-33 provides that actions for "injuries to the reputation . . . shall be brought within one year after the right of action accrues."

Statute of limitation is an affirmative defense pursuant to OCGA § 9-11-8 (c). Thus, Shaw bore the burden on summary judgment to come forward with evidence demonstrating as a matter of law that Garcia's alleged defamation occurred more than a year prior to the filing of her defamation action.[5] Once Shaw did this, by pointing to the 18-month time lapse between the filing of its fraud complaint with the Board and Garcia's filing of her defamation action, and by pointing to an absence of evidence of other defamatory acts, the burden shifted to Garcia either to show that her

---

[5] *Realty World-Druid Realty, Inc. v. Hooper Properties, Inc.*, 191 Ga. App. 773, 774 (1) (b) (383 SE2d 164) (1989).

13

case fell under the continuing tort doctrine, or that the statute of limitation was tolled.[6]

This she has failed to do.

Garcia first argues that the statute of limitation had not run because she was not "fully harmed" until she was arrested on April 8, 2010, and that neither she nor her Workers' Compensation attorney knew about the fraud complaint until after that arrest. This argument is unavailing. It is well-established that "[a]ctions for injury to the reputation . . . must be brought within one year from the date of the alleged defamatory acts regardless of whether or not plaintiff had knowledge of the act or acts at the time of their occurrence."[7]

Garcia also alleges that there is evidence that Shaw and its agents continued to defame her in the period between the submission of the fraud complaint and her arrest, but points us to no evidence in the record on this point. Rather, she alleges that she is entitled to a negative inference because Shaw's attorney, Ryan, cited attorney-client

---

[6] Id.

[7] (Citation and punctuation omitted.) *Brewer v. Schacht*, 235 Ga. App. 313, 317 (4) (a) (509 SE2d 378) (1998) (statute of limitation began to run when allegedly defamatory report was submitted at an open meeting, rather than when plaintiff's injury occurred). Accord *Cunningham v. John J. Harte Assocs., Inc.*, 158 Ga. App. 774, 775 (282 SE2d 219) (1981) (statute of limitation began to run when written report was submitted to county, not from date of injury).

privilege and the work-product doctrine in declining to answer deposition questions regarding Shaw's communications with the Board and with law enforcement. Although Garcia initially filed a motion to compel Ryan's testimony, she voluntarily withdrew it. Pretermitting whether a negative inference could obtain here, we decline to permit Garcia to pursue on appeal that which she abandoned in the trial court.[8]

Thus, Garcia's arguments that Shaw's actions constituted a continuing injury are unavailing. In an analogous situation involving a defamation case related to a series of newspaper articles, we determined that the statute of limitation began to run on the last date that the news source spoke to reporters, rather than on the first date that an article in a series was published.[9] Here, the facts do not support a claim that the purported injury was inflicted over a period of time, as the alleged defamatory

---

[8] See, e.g., *Peterson v. Baumwell*, 202 Ga. App. 283, 285 (2) (414 SE2d 278) (1991) (failure to oppose motion to compel amounts to "acquiescence by silence" and waives right to appeal, as a party may not complain of a judgment or ruling his own conduct aided in causing).

[9] *Torrance v. Morris Publishing Group LLC*, 281 Ga. App. 563, 566 (1) (636 SE2d 740) (2006) (libel is published when it is communicated to any person other than the party libeled); *Scouten v. Amerisave Mtg. Corp.*, 283 Ga. 72, 73 (1) (656 SE2d 820) (2008) (publication of slander or oral defamation occurs upon communication to anyone other than the person slandered).

15

publication to the Board of the fraud complaint constituted a completed act.[10] We find

no error, and affirm.

*Judgment affirmed. Andrews, P. J., Doyle, P. J., and Boggs, J., concur, Miller,*

*P. J., Phipps, P. J. and Ray, J., concur in Division 2 and dissent in Division 1.*

---

[10] See *Cunningham*, supra at 774.

A12A1667. GARCIA v. SHAW INDUSTRIES, INC.

RAY, Judge.

Because the majority opinion incorrectly finds that a rational jury could not find Shaw's conduct either outrageous or extreme, I respectfully dissent to Division 1; I concur fully in Division 2.

Garcia has provided evidence amply evincing a fact question for the jury on the issue of whether Shaw's conduct in filing the fraud complaint with the Board, and in taking steps to engineer her arrest, was extreme and outrageous. First, Shaw filed the Board complaint alleging fraud when it knew or should have known that a fraud claim could not survive because an essential element necessary to support such a claim – injury – was entirely absent. Shaw's attorney filed the fraud complaint on the company's behalf, implying that Garcia was not entitled to Workers' Compensation benefits, even though Shaw never disputed Garcia's job-related injury or her entitlement to medical and TPD benefits. See *Earth First Grading v. Gutierrez*, 270 Ga. App. 328, 330 (2) (606 SE2d 332) (2004) (illegal immigration status does not bar an employee from receiving Workers' Compensation benefits).

Georgia law defines the tort of fraud not only as the "willful misrepresentation of a material fact, made to induce the other to act," but also requires that the other party "act[] *to his injury*." (Footnote omitted; emphasis supplied.) *Weaver v. Pizza Hut of America, Inc.*, 298 Ga. App. 645, 652 (3) (680 SE2d 668) (2009). Given that no one disputes Garcia's entitlement to the benefits mentioned above, a fraud claim would necessarily fail for lack of proof of injury either to Shaw or the Board.[1]

Further, Garcia provided other evidence showing that Shaw

> engaged in intentional or reckless conduct of an extreme and outrageous nature that caused her severe emotional distress. This conduct must be of such serious import as to naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress. . . . And while some conduct may not rise to the requisite level of outrageousness and egregiousness as a matter of law, once the evidence shows that reasonable persons might find the presence of extreme or outrageous conduct, the jury must find the facts and make its own characterization.

(Punctuation and footnotes omitted*.) Turnage v. Kasper*, 307 Ga. App. 172, 182-183 (1) (c) (704 SE2d 842) (2010).

---

[1] Although the majority expends some effort in outlining Shaw's argument that Garcia is not entitled to TTD benefits because her inability to work is caused by her status as an unauthorized worker, rather than by her injury, this recitation is utterly irrelevant. Garcia's eligibility for TTD benefits is not before us on appeal.

2

Further, a rational and impartial jury could find that Shaw acted intentionally or recklessly, and in an extreme and outrageous manner, given that its attorney filed a fraud complaint containing incomplete information that foreseeably led a government agency to instigate Garcia's arrest. See *Fleming v. U-Haul Co. of Ga.*, 246 Ga. App. 681, 685 (5) (541 SE2d 75) (2000) (jury could find intentional infliction of emotional distress where, despite U-Haul's knowledge of circumstances causing defendant not to return rented truck, it nonetheless engineered his arrest).

Here, the record shows that Shaw's attorney, Ryan, filed the fraud complaint on Shaw's behalf and failed to reference or include a copy of the July 26, 2007, Form WC-14 notice of claim Garcia had filed identifying herself under *both* the Garcia and Sanchez names. Garcia revealed this dual identity prior to receiving any Workers' Compensation checks from Shaw's third-party administrator. The record contains evidence that Shaw was copied on this WC-14 notice. The record also contains deposition evidence from other employees that Shaw supervisors knew of Garcia's dual identity even before the WC-14 was filed. Additionally, the record contains evidence that when Shaw purchased Modern Fibers, where Garcia's husband worked, Garcia reapplied for her Modern Fibers job at Shaw using the Sanchez name. Garcia

3

deposed that the Shaw employee who helped her fill out the application told her to apply using the Sanchez name, rather than her real name.

The majority's response to this behavior on Shaw's part is to state that, "[a]though we do not condone Shaw's conduct, we conclude that it does not rise to the level of extreme and outrageous conduct necessary to sustain a claim of intentional infliction of emotional distress." I find this response inadequate.

First, the majority falls into the same trap that caught the trial court: it chooses sides. This is an appeal from the grant of summary judgment to Shaw. We must view the evidence in the light most favorable to the non-moving party, that is, Garcia. Viewing the facts appropriately, it is abundantly clear that a rational jury could find that Shaw acted outrageously or maliciously in inducing Garcia to cash checks it knowingly issued under her false name – then later accused her via the Board complaint of "suspected identity fraud" and "suspected misrepresentation for the purpose of obtaining workers' compensation benefits." Further, a rational jury could find that Shaw was complicit in perpetuating Garcia's use of the Sanchez name when its employee encouraged her to reapply for her job under that name. Thus, any insinuation that Shaw was acting altruistically in attempting to curtail Garcia's illegal behavior seems inconsistent with this evidence.

4

Even if the self-serving affidavits of Shaw's attorney and employee stating that they bore Garcia no ill will constitute "sworn testimony [that] evidences [a party's] good faith in filing [a] complaint" such that Garcia "cannot rest upon [her] allegations or denials but is cast with the burden of showing there was a genuine issue for trial," (Citation and punctuation omitted.) *Farrar v. Macie*, 297 Ga. App. 192, 195 (3) (676 SE2d 840) (2009), Garcia has clearly met this burden, creating a fact question for trial.

Also, as to Shaw's provision of incomplete information to the Board, I find it telling that, after Garcia's arrest, her Workers' Compensation lawyer obtained her prompt release from jail on her own recognizance even though Garcia was being held on $8,000 bail. He did this by providing the fraud unit's supervisor with a copy of the Form WC-14, *which Shaw never gave the Board*, and which showed that *Shaw knew of Garcia's dual identity when it issued her checks* under the Sanchez name. The majority's claim that everything Shaw stated in the complaint was "true" is in itself misleading. There is ample evidence from which a jury could find that Shaw omitted a material fact from that complaint when it concealed from the Board its knowledge that Garcia was using the Sanchez name, and that even with this knowledge, it initiated payments to her under the Sanchez name – then accused her of fraud and using a false identity. Concealing a material fact constitutes fraud if Shaw was

5

obligated to communicate that fact based upon the circumstances of the case. See *Kent v. White*, 238 Ga. App. 792, 793 (1) (a) (520 SE2d 481) (1999).

There also is evidence from which a jury could find that Garcia suffered severe emotional distress. Garcia deposed that after being arrested as she was leaving her lawyer's office, she was taken to jail and not released until the next day. Because of her absence, her four school-age children had to be placed in the care of nuns. She suffered pain in her chest that frightened her, and she felt as if she were suffocating. After leaving jail, she went to the emergency room, where she was examined for signs of a heart attack or panic attack. Further, Garcia deposed that immigration agents later came to her home, frightening her and her children. The agents informed her of deportation proceedings, and told her that they had come because Ryan, Shaw's attorney, had contacted them. These events would "naturally give rise to such intense feelings of humiliation, embarrassment, fright or extreme outrage as to cause severe emotional distress." (Footnote and punctuation omitted.) *Turnage*, supra at 183 (1) (c). Accord *Gordon v. Frost*, 193 Ga. App. 517, 520-522 (1) (388 SE2d 362) (1989) (concluding that the eight or nine hours plaintiff spent in jail would naturally give rise to the emotions necessary to support a claim.)

6

The causal link between Garcia's emotional distress and Shaw's conduct is clear. See *Turnage*, supra at 188 (2). The evidence shows that Luanne Clarke, an attorney practicing with Shaw's outside law firm, when asked if her firm had anything to do with Garcia's arrest, deposed that the arrest took place "at the request of a client." Further, Shaw's attorney, Ryan, deposed that his filing of the fraud complaint on Shaw's behalf led to the Board's investigation. That investigation logically led to the Board's fraud unit swearing out the warrants that led to Garcia's arrest. Here, the evidence clearly presents a fact question for the jury as to whether there was a causal connection between Shaw's actions and Garcia's allegation of emotional distress.

Finally, although the majority analyzes whether OCGA § 34-9-24 (d) and OCGA § 51-5-7 provide a safe harbor protecting Shaw from Garcia's claims, it fails, ultimately, to decide the issue. To qualify for these protections, Shaw must have acted "[i]n the absence of fraud or malice," OCGA § 34-9-24 (d), or "in good faith." See OCGA § 51-5-7. I believe neither Code section protects Shaw. From the facts outlined above, a rational jury assuredly could find evidence of fraud, bad faith, or malice on Shaw's part, barring the company from the protections of OCGA §§ 34-9-24 (d) and 51-5-7.

I am authorized to say that Presiding Judge Phipps and Presiding Judge Miller join in this dissent as to Division 1.