A03A1086. CANALES v. WILSON SOUTHLAND INSURANCE
AGENCY et al.
(583 SE2d 203)

PHIPPS, Judge.

After his van was destroyed by fire in Mexico, Carlos Canales filed a claim with Canal Insurance Company, which had insured the van against physical damage. Canal denied the claim because the policy expressly stated that it applied only to losses occurring in the

United States or Canada. Canales sued Wilson Southland Insurance Agency, which had procured the policy for him, alleging fraud and breach of fiduciary duty. The trial court granted summary judgment to Wilson Southland, ruling that Canales's failure to read the policy barred recovery.[1] We affirm.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[2] We review a trial court's grant of summary judgment de novo, viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[3]

So viewed, the record shows that Canales bought a van in 1999 and approached Jeff Wilson of Wilson Southland to obtain insurance for it. Canales had known Wilson, who is an independent insurance agent, for several years and had obtained other policies through him. Because Canales neither spoke nor read English, he brought interpreter Maria Escamilla with him to see Wilson.

Canales averred that he had sought "automobile insurance, including casualty loss coverage, which would cover [his] van in the trips from Dalton to various places in Mexico and back." According to Canales, Wilson told Escamilla and him that Canal would write a policy covering the van in both the United States and Mexico, but the premiums would be expensive. Canales agreed to pay them. Escamilla testified that she understood from meeting with Wilson that the policy would cover the van while it was in Mexico. Wilson, however, testified that he told Canales and Escamilla that "coverage was not effective in Mexico."

The policy stated that it "applies only to loss which occurs . . . while the covered automobile is within the United States of America, its territories or possessions, or Canada." Canales admitted that he never read the policy, and no one read it to him. Escamilla testified that she would have read the policy to Canales if he had asked her to do so.

1. Canales argues that the trial court erred by granting summary judgment to Wilson Southland because he "justifiably relied on the guidance, expertise and judgment of Jeff Wilson" to procure the proper insurance for the van.

Generally, an insured is obligated to examine an insurance policy and to reject it if it does not furnish the desired coverage.[4] This

---

[1] Canales also sued Canal, and Canal also won summary judgment. Canales has moved to dismiss Canal as a party on appeal, and we grant that motion.

[2] OCGA § 9-11-56 (c).

[3] *Waddell v. Bhat*, 257 Ga. App. 580, 582 (2) (571 SE2d 565) (2002).

[4] *McCoury v. Allstate Ins. Co.*, 254 Ga. App. 27, 28 (2) (561 SE2d 169) (2002); *Auto-Owners Ins. Co. v. Barnes*, 188 Ga. App. 439, 443 (4) (373 SE2d 217) (1988).

rule does not apply when (1) the agent has held himself out as an expert and the insured has reasonably relied on the agent's expertise to identify and procure the correct type or amount of insurance or (2) "the evidence reflects a special relationship of trust or other unusual circumstances which would have prevented or excused [the insured] of his duty to exercise ordinary diligence."[5] Neither exception applies here.

According to Canales's affidavit, he knew what kind of insurance policy he wanted for the van before he approached Wilson. Thus, he did not rely on Wilson's expertise to identify and procure the correct type of insurance for him.

Nor is there evidence that Canales enjoyed a confidential relationship with Wilson. A confidential relationship exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith."[6] The party asserting the existence of a confidential relationship has the burden of establishing its existence.[7]

To support his claim of a confidential relationship, Canales contends that he had dealt with Wilson in the past and had come to trust him; that he was "unsophisticated in matters of insurance"; and that he did not speak English. These facts do not demonstrate a confidential relationship. That two people have transacted business in the past and "have come to repose trust and confidence in each other as the result of such dealings is not sufficient, in and of itself, to warrant a finding that a confidential relationship exists between them."[8] Despite Canales's alleged lack of sophistication about insurance, he admittedly did not rely on Wilson to determine the kind of policy he needed for the van. And he compensated for his lack of familiarity with English by bringing Escamilla to his meeting with Wilson.[9] Thus, the undisputed facts demonstrate no confidential relationship between Canales and Wilson that would have abrogated Canales's duty to read the policy.

The policy clearly and unambiguously stated that coverage applied only to losses incurred in the United States or Canada.

---

[5] (Punctuation and footnote omitted.) *Heard v. Sexton*, 243 Ga. App. 462, 463 (532 SE2d 156) (2000).

[6] OCGA § 23-2-58.

[7] *Yarbrough v. Kirkland*, 249 Ga. App. 523, 527 (2) (548 SE2d 670) (2001).

[8] *Kienel v. Lanier*, 190 Ga. App. 201, 203 (2) (378 SE2d 359) (1989); see also *Parello v. Maio*, 268 Ga. 852, 853 (1) (494 SE2d 331) (1998).

[9] Wilson testified that Wilson Southland employed a fluent Spanish speaker to work as an interpreter in its office. Canales's decision to bring his own interpreter, rather than use the one provided by the agency, is further evidence that his relationship with Wilson was arm's length rather than confidential.

Although Canales could not read English, he used an interpreter who testified that she would have read the policy to him if asked to do so. Under these circumstances, Wilson Southland was entitled to summary judgment on Canales's claims.[10]

2. Canales also argues that summary judgment was improper because there is evidence that Wilson fraudulently misrepresented that the van was covered in Mexico. Canales relies on a sentence in our Supreme Court's opinion in *King v. Brasington*[11] stating that intentional misrepresentation by an agent will relieve an insured of his duty to examine the policy. We decline to follow the principle enunciated in that sentence because it was dictum[12] and it conflicts with other precedent from the Supreme Court and this court.

In *King*, an insured sued his insurance agent for misrepresentation and failure to procure an insurance policy on his wife's life. The Court held that the insured's claims were barred as a matter of law by his failure to examine and reject the policy for insufficient coverage.[13] In addressing the insured's argument that the agent had defrauded him, the Court wrote: "Where an agent intentionally misrepresents the existence of coverage or the extent of coverage an action in tort will lie and the insured's claim may not be defeated by his failure to examine and reject the policy. [Cits.]"[14] The Court found, however, that the evidence showed only "misunderstanding or at the most negligence" by the agent, not fraud or misrepresentation.[15] Thus, the Court's statement that an agent's fraud relieves an insured of his duty to review the policy was not necessary to the decision in *King*.

In support of the statement, the *King* Court cited two cases, neither of which in any way supports the stated proposition. First, the Court cited *Clark v. Kelly*,[16] in which a homeowner sued an insurance agent for fraudulently representing that he had issued a "binder" which would provide interim insurance on her property before a regular policy could be issued. The property was destroyed

---

[10] Although Canales asserts on appeal that neither he nor Escamilla remembers receiving the policy, he did not make this argument in the trial court. To the contrary, Canales's attorney told the court at the hearing on the motion for summary judgment that Canales had, in fact, received the policy. Thus, we will not consider for the first time on appeal Canales's argument, to the extent he is trying to make one, that he was not obligated to read the policy because he never received it. See *Assn. Svcs. v. Smith*, 249 Ga. App. 629, 632 (1) (549 SE2d 454) (2001).

[11] 252 Ga. 109 (312 SE2d 111) (1984).

[12] See *Callaway v. State*, 275 Ga. 332 (567 SE2d 13) (2002) (dictum in Supreme Court opinion is not binding).

[13] *King*, supra at 110 (1).

[14] Id.

[15] Id.

[16] 217 Ga. 449 (122 SE2d 731) (1961).

by fire the day after the agent made this alleged misrepresentation, and the insurance company denied liability. The issue before the Court was whether the homeowner had stated a valid fraud claim, or whether the alleged fraud was based on representations about future events.[17] Nowhere did the opinion discuss the homeowner's duty to read and examine her policy, because no policy had been issued as of the date of loss.

The *King* Court also cited *Anderson v. Redwal Music Co.*[18] There, Redwal sued two insurance agents for intentionally misrepresenting that Otis Redding, one of Redwal's officers, was immediately covered by a $100,000 life insurance policy. Redding died six days later in a plane crash, and the insurance company paid only $50,000. The Court held that the agents were not entitled to summary judgment because " 'an action in tort may be based upon a misrepresentation that insurance coverage has been effected when no policy or binder has been issued.' "[19] The Court did not address Redwal's obligation to read the policy on Redding's life; indeed, Redwal probably had not received the policy when Redding died only six days after it was purchased. In any event, *Anderson* never said that fraud cancels the duty to read.

Contradicting the dictum in *King* is a long line of cases holding that a party to a contract — including an insurance contract — must read the contract, and that fraud excuses the duty to read only if it is " 'such fraud as prevents the party from reading.' "[20] This rule is based on the commonsense principle that "[o]ne cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relationship of trust or confidence exists. [Cit.]"[21] A party to a contract must exercise "ordinary diligence in making an independent verification of contractual terms and representations, failure to do which will bar an action based on fraud."[22]

The fraud alleged here — Wilson's misrepresentation of the extent of the policy's coverage — did not prevent Canales from reading the policy, or having it read to him. Because Canales had a duty to read his insurance policy, his reliance on Wilson's alleged misrepresentations about its contents was not reasonable. Thus, Wilson

---

[17] Id. at 451.

[18] 122 Ga. App. 247 (176 SE2d 645) (1970).

[19] (Citations omitted.) Id. at 251.

[20] (Citations omitted.) *Martin v. Alford*, 214 Ga. 4, 7 (1) (102 SE2d 598) (1958); see also, e.g., *Results Oriented v. Crawford*, 245 Ga. App. 432, 438-439 (1) (b) (538 SE2d 73) (2000), aff'd, *Crawford v. Results Oriented*, 273 Ga. 884 (548 SE2d 342) (2001); *Life Ins. Co. of Virginia v. Conley*, 181 Ga. App. 152, 153 (351 SE2d 498) (1986); *Curtis v. First Nat. Bank of Commerce*, 158 Ga. App. 379, 381 (280 SE2d 404) (1981).

[21] *Life Ins. Co. of Virginia*, supra.

[22] (Citations and punctuation omitted.) Id.

Southland's alleged misrepresentation did not present an issue for the jury.[23]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED JUNE 5, 2003.

*Davis, Kreitzer, Kemp, Joiner & Melton, John W. Davis,* for appellant.

*Gray & Gilliland, Charles A. Ratz, Owen, Gleaton, Egan, Jones & Sweeney, Charles J. Cole, Eric A. Kane,* for appellees.

---

[23] See *Dyer v. Honea,* 252 Ga. App. 735, 737 (1) (557 SE2d 20) (2001) ("In order for a genuine issue of material fact to exist as to justifiable reliance, there must be some evidence that the plaintiff exercised his duty of due diligence to ascertain the truth of the matter and to avoid damage.") (punctuation omitted).