**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and PINSON, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**October 15, 2021**

# In the Court of Appeals of Georgia

A21A1136. WILSON BUSH, AS ADMINISTRATOR OF THE ESTATE OF JERRY MICHAEL SINGLETON v. LIBERTY MUTUAL INSURANCE COMPANY.

PINSON, Judge.

When an employee is paid workers' compensation for injuries caused by someone other than their employer, Georgia law allows the employee to sue that third party. OCGA § 34-9-11.1 (a). In those circumstances, Georgia law also grants the workers' compensation *insurer* a subrogation lien against any recovery from the employee's lawsuit, in an amount up to the compensation paid to the employee. OCGA § 34-9-11.1 (b). If the employee does not bring that lawsuit within a year after the injury, the insurer may bring that suit itself to protect and enforce its subrogation lien. OCGA § 34-9-11.1 (c). And if the insurer recovers more than the amount of its lien, any excess must be paid to the employee. Id.

In this case, an insurer brought just such a lawsuit to enforce its subrogation lien after the injured employee failed to bring suit. But the insurer settled the lawsuit with the third parties for an amount less than its subrogation lien, so the employee's estate did not get any money from that suit. The estate sued the insurer for breach of fiduciary duty on the theory that it failed to sufficiently protect the estate's interests in the subrogation action. The trial court granted summary judgment in favor of the insurer, and we now affirm, because no part of OCGA § 34-9-11.1 imposes a fiduciary duty on an insurer to protect the employee's legal interests in its subrogation action brought under that statute.

**Background**

A. Statutory Framework

Because this appeal deals with the interpretation of OCGA § 34-9-11.1, we start by describing that statutory framework. To do that, we will borrow the trial court's clear and succinct description:

> When an employee is injured on the job, his recovery is normally limited to workers' compensation benefits. OCGA § 34-9-11. However, if a person other than his employer has legal liability for the employee's injury, the employee may bring suit against the third-party tortfeasor. OCGA § 34-9-11.1 (a). If the employee has such a tort claim, the

2

employer [and that employer's insurer] is granted a subrogation lien, not to exceed the actual amount of workers' compensation benefits paid, against the employee's recovery. OCGA § 34-9-11.1 (b). The employer [or insurer] may intervene in the employee's tort suit but may recover its subrogation lien only after the employee has been fully and completely compensated for all economic and non-economic losses incurred as a result of the injury. Id. The employee must institute any such tort action within the applicable statute of limitations; however, if the employee fails to bring suit within one year after the date of injury, "then the employer or such employer's insurer may but is not required to assert the employee's cause of action in tort, either in its own name or in the name of the employee." OCGA § 34-9-11.1 (c). In such a case, the employer or the employer's insurer must immediately notify the employee of its assertion of such cause of action "and the employee shall have a right to intervene." Id.

## B. This Case

On November 15, 2013, Jerry Singleton got in a car accident with Robert Earle.[1] When they crashed, both Singleton and Earle were working for their respective trucking companies: Singleton for Wilson Trucking Company, and Earle for The Waggoners Trucking, Inc. At that time, Liberty Mutual was the workers'

---

[1] This is an appeal from the grant of summary judgment, so we review the evidence (and recount it here) in the light most favorable to the non-moving party, i.e., Bush, the estate administrator. *Smith v. Tibbits*, 359 Ga. App. 362, 363 (857 SE2d 820) (2021).

compensation insurer for Wilson Trucking. Singleton made a workers' compensation claim, and Liberty Mutual started making medical and indemnity payments to Singleton.

Five months after the accident, Liberty Mutual received notice that Singleton had hired legal counsel to pursue personal injury claims against Earle and Waggoners. Soon after receiving this notice, Liberty Mutual notified these parties of Liberty Mutual's potential claim against them to recover money paid to Singleton in workers' compensation benefits, and it notified Singleton's counsel of its subrogation lien created by operation of OCGA § 34-9-11.1. Liberty Mutual sent another notice of its lien and intent to protect its interests to Singleton's counsel in June 2014, and it copied Singleton's counsel on its separate notice to Waggoners' insurer.

In February 2015, Liberty Mutual and Singleton agreed to settle his workers' compensation claim for $50,000, and the State Board of Workers' Compensation approved the settlement. In total, Liberty Mutual paid Singleton about $104,000 in workers' compensation benefits.

In May 2015, Singleton died. Nothing in the record indicates that Singleton's death was a result of the injuries sustained in the car accident.

On November 13, 2015, two days before the statute of limitations for personal-injury actions ran, Liberty Mutual sued Earle and Waggoners—the other driver involved in Singleton's accident and his company—in its own name under OCGA § 34-9-11.1. At that time, neither Singleton nor his estate had brought an action against Earle or Waggoners. In their answer, Earle and Waggoner disputed damages and causation because Singleton was involved in another car accident on the same day as his accident involving Earle.

Nineteen months into Liberty Mutual's subrogation action, the estate's temporary administrator moved to intervene based on OCGA §§ 9-11-24 and 34-9-11.1.[2] The trial court denied the motion on the ground that the temporary administrator lacked standing to intervene.[3]

As the trial date approached, Liberty Mutual and Waggoners began negotiations, and shortly before trial, they settled Liberty Mutual's claims for $45,000. As a result, the subrogation action was dismissed with prejudice on August

---

[2] A temporary administrator of Singleton's estate was appointed in May 2017. Singleton's estate did not have an administrator at all until then—his wife tried to become his temporary administrator in February of 2017, but she could not post the required bond.

[3] This ruling was not appealed.

5

2, 2017. Because the settlement amount was less than Liberty Mutual's subrogation lien, no money from the settlement was paid to Singleton's estate.

On August 10, 2017, eight days after Liberty Mutual's case was dismissed, Wilson Bush was appointed as permanent administrator of Singleton's estate. As the trial court noted below, the statute of limitation applicable to the estate "was tolled from the time of Singleton's death on May 20, 2015, through to the appointment of Wilson Bush as administrator of the estate on August 10, 2017," so the two-year statute of limitations on Singleton's personal-injury claims against Earle and Waggoner did not expire until February 6, 2018. See OCGA § 9-3-92. Yet it appears that the estate took no action as to those claims in the six months between appointment of the permanent administrator and the expiration of the limitations period on February 6.

Instead, on February 21, 2018, the estate filed this lawsuit against Earle, Waggoners, and Liberty Mutual, claiming that Liberty Mutual breached its fiduciary duty to protect the estate's interest in the subrogation action. After the trial court dismissed all defendants except Liberty Mutual, Liberty Mutual moved for summary judgment. After a hearing, the trial court granted the motion. In short, the court

6

concluded that Liberty Mutual did not have a fiduciary relationship with Singleton or his estate based on either OCGA § 34-9-11.1 or the conduct of the parties.

**Discussion**

1. On appeal, Bush (the estate administrator) contends that the trial court erred in concluding that Liberty did not owe the estate a fiduciary duty to protect its interests in the subrogation action. Bush grounds this supposed duty mostly in OCGA § 34-9-11.1, the statute that gives the insurer the right to "assert the employee's cause of action in tort" if the employee fails to bring the action within a year after the injury. That statutory right, Bush asserts, comes with a corresponding duty to "protect the injured Plaintiff's claim" rather than simply pursuing the insurer's own interests in the litigation. We are not persuaded.

A relationship that gives rise to a fiduciary duty exists either when a party exercises a "controlling influence over the will, conduct, and interest of another" or when, "from a similar relationship of mutual confidence, the law requires the utmost good faith." OCGA § 23-2-58; *Ray v. Hadaway*, 344 Ga. App. 642, 645 (2) (811 SE2d 80) (2018). Examples of fiduciary relationships include "the relationship between partners; principal and agent; guardian or conservator and minor or ward; personal representative or temporary administrator and heir, legatee, devisee, or

7

beneficiary; [and] trustee and beneficiary." OCGA § 23-2-58. The fiduciary in these kinds of relationships owes a duty of "utmost good faith" and loyalty to the other party. *Hendry v. Wells*, 286 Ga. App. 774, 782 (2) (a) (650 SE2d 338) (2007).

Like the trial court, we cannot locate any such duty imposed on the insurer in OCGA § 34-9-11.1. Certainly that statute does not create such a duty expressly. The statute creates *other* duties for the insurer (or employer) who brings an action under it: it must "immediately notify the employee" that it's bringing the action, and if it recovers more than the amount of the subrogation lien, that amount must be "paid over to the employee." OCGA § 34-9-11.1 (c). The presence of these express duties owed by the insurer to the employee implies the exclusion of other similar duties, including a duty to litigate an action for the benefit of an absent employee. See *Turner v. Ga. River Network*, 297 Ga. 306, 308 (773 SE2d 706) (2015) (citing "longstanding tenets of statutory construction: '*expressio unius est exclusio alterius* (expression of one thing implies exclusion of another) and *expressum facit cessare tacitum* (if some things are expressly mentioned, the inference is stronger that those not mentioned were intended to be excluded)'").

Nor does the statute create a fiduciary relationship by letting the insurer stand in the shoes of the employee. As Bush points out, the statute describes the action

brought by an insurer under the statute as "the employee's cause of action in tort." OCGA § 34-9-11.1 (c). This language tells us that the insurer's action is derivative—that is, the statute "does not create a different or independent cause of action in the employer." *Ga. Elec. Membership Corp. v. Hi-Ranger, Inc.*, 275 Ga. 197, 198 (1) (563 SE2d 841) (2002). But neither this language nor the balance of the statutory text gives the insurer any control or influence over the employee or the employee's own claims. To the contrary, the statute preserves the employee's agency: the employee has an exclusive right to bring the action for a year, and after that, the employee may intervene in the action brought by the insurer or bring his own, separate action at any time before the statute of limitations runs. OCGA § 34-9-11.1 (c). In other words, far from requiring any employee to place his trust in the insurer bringing the action—which might move the needle towards a fiduciary relationship—the statute contemplates the employee acting to protect his own interests in any recovery by suing or intervening. See *P.F. Moon & Co. v. Payne*, 256 Ga. App. 191, 193 (1) (568 SE2d 113) (2002) (explaining that under OCGA § 34-9-11.1, "an employee ... may be intervening not only to secure his interest in any recovery, but also to protect the proper prosecution of his own cause of action.").

9

Reading the statute as leaving the onus to protect the employee's interests on the employee himself instead of shifting that responsibility to an insurer or employer also makes practical sense in the context of this statutory scheme. See *City of Guyton v. Barrow*, 305 Ga. 799, 805 (3) (828 SE2d 366) (2019) ("The primary determinant of a text's meaning is its context, which includes the structure and history of the text and the broader context in which that text was enacted."). As the trial court observed, the interests of the insurer and employee in these actions often will not be aligned. Because an insurer's recovery is capped by the amount of its subrogation lien, it has little incentive to make litigation decisions that would allow recovery of a greater amount, while the employee would generally want to maximize any recovery. OCGA § 34-9-11.1 (c). These competing incentives make it quite likely that an insurer and an employee would make any number of different decisions in the course of litigation that serve their own interests rather than the other's. "For example, [an insurer's] interests would be best served by a special verdict form in order to assert its lien rights while [the employee's] interests would be better served by a general verdict." *Dept. of Admin. Servs. v. Brown*, 219 Ga. App. 27, 28 (464 SE2d 7) (1995). And as we saw here, an insurer may well choose to settle for a lower amount because only the employee would benefit from a recovery that exceeds the amount of the insurer's

10

lien. OCGA § 34-9-11.1 (c). That this statutory scheme builds in such obviously competing incentives while giving the insurer and employee independent means of protecting their own interests reinforces the conclusion that the statute does not impose a fiduciary duty on the insurer to act in the best interests of the employee.

2. Nor did any fiduciary duty arise based on the "facts of [this] particular case." *Ray*, 344 Ga. App. at 645 (2). Bush observes that Liberty Mutual's complaint against Earle and Waggoner sought "all losses compensable under Georgia law, including ... general damages," which would be losses suffered by Singleton. . But this remedial request just highlights that Liberty Mutual's claims, like those of any insurer proceeding under OCGA § 34-9-11.1, derive from the employee's claims. Without more, that uncontroversial point does not establish that Liberty Mutual assumed a duty to protect the estate's interests throughout its litigation, as Bush contends. And no other circumstances here reveal anything approaching a relationship of control, influence, or confidence that could give rise to a fiduciary duty to Singleton or his estate. See, e.g., id.; *Dept. of Labor v. McConnell*, 305 Ga. 812, 817–18 (3) (b) (828 SE2d 352) (2019) (no fiduciary relationship existed between unemployment compensation claimant and Georgia Department of Labor to protect claimant's personal information from being disclosed to other claimants); *Canales v. Wilson*

11

*Southland Ins. Agency*, 261 Ga. App. 529, 531 (1) (583 SE2d 203) (2003) (insured was not in confidential relationship with insurance agent and could not rely upon agent's representation about coverage provided by insurance policy when insured failed to examine and read policy). Liberty Mutual's contractual relationship was with Singleton's employer, not Singleton; it brought an action in its own name to protect and enforce its own subrogation lien; and nothing prevented Singleton and his estate from acting to protect their own interests by intervening in Liberty Mutual's action or bringing their own. Taking account of these circumstances and the record as a whole, we agree with the trial court that the conduct of the parties here did not create a fiduciary relationship.

3. In light of our holdings above, we need not reach Bush's remaining arguments.

*Judgment affirmed. Dillard, P. J., and Mercier, J., concur*.